UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| AMWEAR USA, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:20-CV-354-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| GALLS, LLC, | ) | |
| | ) | |
| Defendant, | | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers a suite of contracts and whether a forum-selection clause controls this suit alleging breach of an included agreement. Amwear USA, Inc., initiated the instant Complaint against Galls, LLC, alleging breach of a Supply Agreement. *See* DE 1. Galls moves, pursuant to Rule 12(b)(1), 12(b)(3), and 12(b)(6) to dismiss Amwear's Complaint by enforcing a valid state forum-selection clause that would locate the dispute in California. DE 15 at 7–9. In the alternative, Galls moves to stay the proceedings generally or pursuant to the abstention doctrine in *Colo. River Water Conservation Dist. v. United States*, 96 S. Ct. 1236 (1976). *Id.* at 9–16. The parties have briefed the matter. DE 20; DE 21.

In this case, Amwear has attempted to pluck one contract from a set of integrated transactions, a set already the subject of litigation in California, and litigate that contract in Kentucky. Galls correctly argues that, in this context and in fair review of the full circumstances, relationships, allegations, and agreements, the forum-selection clause at issue properly binds

1

Amwear to litigate in California, resulting in dismissal of the case in this venue. The Court **GRANTS** DE 15.[1]

## I. BACKGROUND[2]

Amwear is a public safety uniform manufacturer. DE 1 at ¶ 5. Defendant Galls is a distributor of public safety uniforms. *Id.* at ¶ 6. On April 26, 2019, Galls, GRP2 Uniforms, Inc. d/b/a Keystone Uniforms OC ("Keystone"), OGA USA, Inc. d/b/a On Guard Apparel ("On Guard"), and Hong Li Hawkins executed a contract, the Asset Purchase Agreement ("APA"), for the sale of all Keystone and On Guard assets to Galls. *See* DE 15-1 at 38–104 (APA)[3]. Michael Wessner, the CEO of Galls, and Hong Li Hawkins, Owner of Keystone and President of On Guard, signed the APA.[4] DE 15-1 at 103–104 (APA). Hawkins is also "an officer and principal shareholder" of Amwear. DE 15-1 at 4 (California Complaint ¶ 8). Amwear, Keystone, and On Guard are "affiliates" under the APA. *See, e.g.,* DE 1-1 at 3 (Supply Agreement ("SA") ¶ 2(a)) ("'Affiliate'" means any person or entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, [Amwear.]"); *see also*

---

[1] Amwear ineffectively invoked the Court's jurisdiction to begin with. Though premised on diversity, Amwear alleges the citizenship of Galls as an entity. An LLC has the citizenship of its members, something Amwear does not provide or allege. *See Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("The general rule is that all unincorporated entities— of which a limited liability company is one—have the citizenship of each partner or member."). This glaring and facial jurisdictional flaw weakens the questioned tether between the controversy and this Court. The party invoking jurisdiction has the burden of showing it, and Amwear stumbles at the gate.
[2] As discussed in detail in Section II, the Court utilizes both the allegations in the Complaint and the information provided by the parties to flesh out the factual background. The California lawsuit is a matter of public record. DE 15-1. The May 11, 2020 letter is one Amwear referenced in the Complaint. *See* DE 1 at 2; DE 15-3 (Letter).
[3] DE 15-1 contains the California complaint. For clarity, the Court cites to DE 15-1 by first referencing the CM/ECF page number and then, if applicable, the specific document.
[4] Keystone, On Guard, and Hawkins are not parties to this action. Hawkins, however, signed the Supply Agreement at issue on behalf of Amwear. DE 1-1 at 14.

DE 15-1 at 8 (California Complaint ¶ 35) (referencing the Transition Services Agreement ("TSA") as applying to "affiliates"); *id.* at 45 (APA Art. I) ("'<u>Affiliate</u>' means, with respect to any Person, any other person controlling, controlled by or under common control with, or the parents, spouse, lineal descendants or beneficiaries of, such Person."); *id.* at 153 (TSA) (listing Amwear as a party to the TSA). Indeed, Amwear is the party designated to receive formal notice (on behalf of Hawkins, On Guard, and Keystone) under the APA. *See* DE 15-1 at 98 (APA Art. X).

The parties signed the APA contemporaneously with numerous "contemplated transactions[.]" *See id.* at 44 (APA Recitals E & F) (noting concurrent execution); *id.* at 46 (APA Art. I) (defining "Contemplated Transactions"); *id.* at 51 (APA Art. I) (defining "Transaction Documents" to include "the Supply Agreement"). The SA, among the other contemplated transactions, is attached to the APA as an Exhibit. *See id.* at 42 (APA Table of Contents) (listing "Exhibit H" as "Form of Supply Agreement"); *id.* at 175–89 (attached signed SA). The SA provided that Galls would buy, at minimum, $4,000,000 worth of public safety equipment from Amwear each year for five years. DE 1 at 2. The APA expressly incorporates the referenced Exhibits "as if fully set forth herein [and further] all references to this Agreement shall be deemed to include the Exhibits and Schedules." DE 15-1 at 101 (APA Art. X).

The basic thrust of the deal included a) Galls buying the assets of On Guard and Keystone (entities controlled by Hawkins, the "Seller Stockholder") mostly to capture the markets and customers of same; b) On Guard and Amwear (also under Hawkins's control) agreeing to provide certain transition services to Galls; c) Galls agreeing to purchase a minimum quantity of product from Amwear for a period; and d) each of On Guard, Keystone, and Amwear agreeing to certain enduring non-competition and non-solicitation provisions.

Soon after the April 26, 2019 closing, the relationship between Galls, Keystone, On Guard, and Hawkins soured. On August 28, 2019, Keystone, On Guard, and Hawkins filed a complaint against Galls in the Superior Court of California, Orange County. DE 15-1 at 2 (the California Complaint). The California Complaint alleges mistake, fraud, breach of contract, and violation of California state law. *Id.* The three plaintiffs seek contract reformation, injunctive and declaratory relief, and damages. *Id.* at 2. Among the many targets of the suit is reformation of Exhibit G to the APA, the TSA, an agreement to which Amwear expressly is party. DE 15-1 at 21 (California Complaint, ¶ 91.d). The case remains pending in California state court.

Now the Kentucky aspect. The SA between Galls and Amwear has a minimum annual purchase requirement. Per Amwear's federal pleading here, Galls failed to meet that duty by the end of the first year; it only purchased $1,198,687.43 worth of public safety equipment between April 26, 2019 and April 26, 2020, well below the agreed minimum. DE 1 at ¶¶ 7–8. Three days after the end of the first contract year, Amwear notified Galls that it was in breach and demanded cure. *Id.* On May 11, 2020, Galls responded to the demand letter, claiming that fraudulent formation of the APA and seller breaches of the APA were the source or cause of any non-performance by Galls under the SA. DE 1, ¶ 10 (reference to Galls's response); *see also* DE 15-3 (actual response, blaming the APA sellers and Amwear, as affiliated entities, for misrepresentations, manipulations, and other acts that induced entry into the SA and vindicated any alleged breach).

On August 18, 2020, Amwear filed the instant Complaint against Galls in this Court. *See* DE 1. Amwear's Complaint alleges that Amwear entered into the SA with Galls and that Galls breached, without cure, the SA. DE 1 at ¶¶ 8–10. Galls, in reliance on the APA's umbrella forum-

selection clause, moved to dismiss the Complaint or in the alternative to stay proceedings. DE 15. Amwear responded and Galls replied. DE 20; DE 21. The matter is ripe for review.

## II. STANDARD

The nutshell arguments are these: Amwear sues in Kentucky to assert rights under the SA, stating that venue is proper, indeed compelled by SA (incorporated) content. Galls seeks dismissal by seeking to hold Amwear to the forum-selection provision of the APA, despite the fact that Amwear is not actually an APA signatory. To Galls, this litigation necessarily implicates the broader validity, formation, and terms of the APA. Alternatively, Galls seeks a discretionary or abstention-based stay to let the California case resolve.

At the outset the Court must define the proper mechanism to enforce a forum-selection clause. Galls points to Rules "12(b)(1), 12(b)(3), 12(b)(6), or any other grounds on which this motion should be raised" to dismiss Amwear's Complaint. DE 15 at 1 n.1. Amwear does not challenge any of the procedural mechanisms,[5] and the parties spend little time justifying the procedural posture. Because the procedural mechanism will determine the scope of the Court's review, *see* Fed. R. Civ. P. 12(d), the Court must determine the proper vehicle.[6]

---

[5] Amwear challenges the attachment of the documents to Galls's motion, but only on grounds of improper authentication. DE 20 at 1 n.1. Amwear does not, as Galls points out, challenge the actual authenticity of the documents. Amwear also does not support this argument with caselaw pertaining to the authentication of a public record in the motion to dismiss context. Amwear itself authenticates and references documents from the same litigation, through an affidavit for the attorney of record for Amwear, Keystone, On Guard, and Hawkins. *See* DE 20-1 at 1, 5. The Court treats as authentic the tendered public filings and deal papers, none of which any party suggests is inauthentic.

[6] The Court assumes, for the purposes of determining the proper standard, that the forum-selection clause is valid. Enforcement, as a procedural matter, is a federal law question. *G.C. Franchising Sys., Inc. v. Kelly*, No. 1:19-CV-49, 2021 WL 1209263, at *3 (S.D. Ohio Mar. 31, 2021) ("The enforceability of a contract's forum selection clause is governed by federal law, not state law." (citing *Stewart Org., Inc. v. Ricoh Corp.*, 108 S. Ct. 2239, 2245 (1988))).

The Supreme Court definitively ruled that 12(b)(3) is not the proper vehicle to enforce a forum-selection clause because such a clause does not render a proper venue improper.[7] *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 134 S. Ct. 568, 578–80 (2013). Similarly, the Sixth Circuit recognizes that "the issue of a forum selection clause is an independent contractual concern created by the actions of the parties, and is not linked to the inherent subject-matter jurisdiction of the court." *Godsey v. Miller*, 9 F. App'x 380, 383 (6th Cir. 2001). Thus, 12(b)(1) is not the appropriate tool. *See Iron Horse Energy Servs., Inc. v. S. Concrete Prods., Inc.*, No. 2:18-cv-2554-MSN-tmp, 2019 WL 11583372, at *6 (W.D. Tenn. July 25, 2019); *Nat'l Renal All., LLC v. Gaia Healthcare Sys.*, No. 3:10-0872, 2010 WL 4659804, at *3 (M.D. Tenn. Nov. 9, 2010) (collecting supportive Sixth Circuit case law).

That leaves 12(b)(6)[8], "failure to state a claim upon which relief can be granted." The nomenclature ill-describes the motion Galls has filed: Galls simply wishes to dismiss the case because, as it argues, the parties are subject to a state forum-selection clause that has already produced a California proceeding. The Court is persuaded by caselaw that, in this case context, misnomers aside, 12(b)(6) is an appropriate mechanism for enforcement of a valid forum-selection clause. Consider first the Court's options. The forum-selection clause at issue prevents the Court

---

[7] While Defendant cursorily states the Complaint should be dismissed "for improper venue," Galls does not further expound how venue is improper. DE 15 at 1. The request, as Galls fleshes it out, is more properly viewed as seeking dismissal by enforcement of a forum-selection clause.

[8] *Atlantic Marine* provides for another alternative mechanism: the doctrine of *forum non conveniens*. 134 S. Ct. at 580. This Court has the power to raise *forum non conveniens sua sponte* if presented with facts that would fit comfortably within the analytical framework. *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009). The parties here did not brief whether *forum non conveniens* would be an apt consideration. Because Sixth Circuit law allows for 12(b)(6) to be used as a mechanism to evaluate relief to Galls, and in the interests of fairness to the parties, the Court will not retool the arguments in the briefs to fit the *forum non conveniens* rubric. *Cf. ACS Transp. Sols., Inc. v. Nashville Transit Auth.*, No. 3:13-1337, 2014 WL 3565013, at *2 (M.D. Tenn. July 18, 2014) (denying a Rule 12(b)(3) request and declining to *sua sponte* raise *forum non conveniens* but allowing the defendant to re-file a motion raising the arguments).

from transferring the case.[9] *See Pope v. Atl. Coast. Line R. Co.*, 73 S. Ct. 749, 752 (1953) (holding that the federal transfer statute does not allow a federal court to transfer a case to a state court). This case began with a federal complaint, so remand is not an option either. The Court, in the face of a request to enforce a valid forum-selection clause, then, must either exercise jurisdiction or dismiss.

The Sixth Circuit, before *Atlantic Marine*, stated in dicta that 12(b)(6) was an appropriate mechanism to dismiss a case pursuant to a valid forum-selection clause. *See Langley v. Prudential Mortg. Cap. Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) (per curiam) ("While we would find the forum selection clause enforceable, Defendant has not yet moved for enforcement of the clause through either a motion to transfer venue under 28 U.S.C. § 1404(a) or a motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim."); *see also id.* at 371 (Moore, J., concurring) ("On the other hand, when a party seeks to enforce a forum-selection clause via a properly brought motion to dismiss, the district court may enforce the forum-selection clause by dismissing the action.") At least two district courts have recognized *Langley*'s dicta, but dismissed the mechanism because of the tension inherent when examining venue and forum-selection clauses through a 12(b)(6) lens. *See Lawson Steel, Inc. v. All State Diversified Prods., Inc.*, No, 1:10-cv-1750, 2010 WL 5147905, at *5 (N.D. Ohio Nov. 23, 2010) (concluding that, in a case removed from state to federal court, Rule 12(b)(6) "is not an appropriate mechanism for a venue challenge" because of its underlying purpose, the procedural consequences of granting such a request, and possible

---

[9] The parties do not discuss the *effect* of the forum-selection clause. In brief, the clause states that relevant claims "shall be instituted in the State of California, and if the *State of California denies jurisdiction*, then the state courts or the Federal courts located in the State of Delaware." DE 15-1 at 97 (APA Art. X) (emphasis added). By implication, the clause points to the state courts of California as primary, then state *or* federal courts in Delaware. Clearly, California has exercised jurisdiction in the state matter Galls points to. *See* DE 15-1. Notwithstanding the effect of the clause, Galls does not request transfer pursuant to 28 U.S.C. § 1404(a) anyway.

7

gamesmanship); *Gouge v. Microbac Lab'ys, Inc.*, No. 3:11-CV-143, 2011 WL 3876919, at *3–4 (E.D. Tenn. Sept. 1, 2011) (examining *Lawson* and declining "to enforce the forum selection clause in this case by way of a Rule 12(b)(6) motion").

Despite the conceptual tension, the Sixth Circuit and district court cases in the Circuit continue to recognize 12(b)(6) as a proper mechanism to enforce a valid forum-selection clause, even after *Atlantic Marine*. *See Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019) (citing *Langley*, 546 F.3d at 366) ("This Court has held that a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a permissible way to enforce forum-selection and arbitration clauses."); *McClain v. Oasis Legal Fin., LLC*, No. 3:19-CV-426-CRS, 2020 WL 520594, at *4 (W.D. Ky. Jan. 31, 2020) (finding 12(b)(6) an appropriate mechanism and, by separate order, dismissing without prejudice); *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, No. 1:18-cv-110, 2020 WL 1227047, at *3, *13 (W.D. Mich. March 13, 2020) (same); *Johnson v. Afassco, Inc.*, No. 5:19-CV-2031, 2020 WL 709285, at *1, *4 (N.D. Ohio, Feb. 11, 2020) (finding 12(b)(6) an appropriate mechanism and dismissing without prejudice.). The Court follows the supported elastic course.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). The Court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Here, the Complaint references only to the SA, the Vendor Agreement ("VA"), the April 29, 2020, demand letter, and the May 11, 2020, response letter. *See* DE 1 at ¶¶ 7–10. The Complaint indeed attaches the SA and the VA. *See* DE 1-1 at 1–15 (SA); *id.* at 19–24 (VA). The May 11, 2020, letter, referenced in the Complaint, was attached as an exhibit to Defendant's motion. *See* DE 15-3.

Galls also appends, as a single exhibit, the California Complaint and its accompanying exhibits. *See* DE 15-1 (including the California Complaint and the APA, a state complaint attachment, in full). "[I]f a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss[,]" and the Court can consider them without converting the motion into a Rule 56 motion for summary judgment. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). "Such public records that a court may consider include *documents* from other court proceedings." *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018) (citing *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)) (emphasis added).

Certainly, the California Complaint and its attached exhibits (notably, the full APA) are part of the public record. Moreover, the SA and the VA, which Amwear attaches to the instant Complaint, are themselves attached to the APA copy appended to the California Complaint. DE 15-1 at 176–89 (SA); *id.* at 193–95 (VA). The integrated (substantively, temporally, and relationally) nature of the contracts necessitates the Court's examination of the APA. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that a plaintiff cannot use artful pleading to "survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied") *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992 (2002). The Court properly considers all documents the parties have provided and discussed in the briefing.

### III.  ANALYSIS

The Court turns to the merits of the motion. Galls argues that the case should be dismissed because the parties bargained for the exclusive California forum in the APA. DE 15 at 7. The clause states

> Except as otherwise provided in Section 7.8, any Claim arising out of or relating to this Agreement or the transactions contemplated hereby shall be instituted in the State of California, and if the State of California denies jurisdiction, then the state courts or the Federal courts located in the State of Delaware.

DE 15-1 at 97 (APA Art. X). Amwear concedes the validity of the forum-selection clause in the APA. DE 20 at 5 ("True, [the forum-selection clause] applies to 'any Claim arising out of or relating to [the APA] or the transactions contemplated hereby[.]"). Amwear opposes the motion by claiming that it is not subject to the APA. DE 20 at 5. Thus, the argument goes: by not being an express party to the APA, Amwear is not bound by the APA's forum-selection clause, the SA exists as "a standalone contract," and venue here is controlled by a forum-selection clause dictated by the SA-incorporated VA. *Id.* at 6.

There is no definitive rule in the Sixth Circuit on when a party to a contract can seek to bind a non-party to a forum-selection clause.[10] *Wiedo v. Securian Life Ins. Co.*, No. 3:19-CV-00097-GFVT, 2020 WL 5219536, at *6 (E.D. Ky. Sept. 1, 2020); *see* G.C. Franchising Sys., 2021 WL 1209263, at *3 ("[A] non-signatory to a contract may be bound by a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." (citing *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997))).

The Sixth Circuit has hinted at approval of the Ninth Circuit's approach to this "nuanced issue[.]" *Wiedo*, 2020 WL 5219536, at *6.

> Similarly, other courts have noted that "a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses" where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)).

*Wilson*, 776 F. App'x at 329. The court in *Wilson* went on to analyze the closely related conduct of the parties, per *Manetti-Farrow*. *Id.*

"Courts in this circuit have expanded on these principles, finding that a non-signatory to a forum selection clause may be bound if the non-signatory is closely related to the contracting

---

[10] Amwear cites a Seventh Circuit case stating that this Court must pierce the corporate veil to apply the forum-selection clause to Amwear. DE 20 at 5. The cases from the Sixth Circuit (and several others, even the Seventh) do not require this exacting standard. The analysis does examine corporate relatedness without the particular showing of veil piercing. *See*, *e.g.*, *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439–40 (7th Cir. 2012) ("A forum selection clause is sometimes enforced by or against a company that is under common ownership (for example as parent and subsidiary) with—that is, an affiliate of—a party to a contract containing the clause[.]"); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (discussing a variety of theories to conclude "that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause").

parties or dispute, such that it was foreseeable that it will be bound." *Wiedo*, 2020 WL 5219536, at *6 (quotations removed) (collecting cases). Briefly, "the question is whether, based on the business relationship between [Keystone, On Guard, and Hawkins] and [Amwear], it is reasonable to conclude that [Amwear] is sufficiently 'closely related' to the parties to the [APA] such that it was foreseeable that it would be bound by the forum selection-clause [sic]." *Id.* Other courts pursue the same approach. *See, e.g., Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 212 (7th Cir. 2015), *as amended* (Dec. 14, 2015) ("[W]e reiterated that the test for whether a nonparty to a contract can enforce—and be bound by—a forum selection clause 'is whether the nonparty is "closely related" to the suit.' Acknowledging that this is a 'vague standard,' we noted that 'it can be decomposed into two reasonably precise principles': ' "affiliation" and "mutuality," ' either of which is sufficient to allow a nonparty to invoke a forum selection clause." (citations omitted)); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1054–55 (N.D. Ill. 2015) ("To be sure, non-signatories sometimes can enforce forum selection clauses, but there must be an 'affiliation' or 'mutuality' with a contracting party[.]").

It is true that Amwear is not a party, by signature or title reference, to the APA. *See* DE 15-1 at 38, 102–04 (APA). However, Amwear is a central and ubiquitous presence in the APA. Under the Recitals, the APA discusses two transactions involving Amwear as a party and executed concurrently with the APA. *Id.* at 44 (APA Recitals E & F). One of those transactions is the Supply Agreement at issue; the other is the earlier-referenced TSA. *Id.* Further, the APA explicitly lists Amwear and its address as the representative of the "Sellers and/or the Seller Stockholder [Hawkins]" for purposes of any notice "required or permitted" to be provided under the APA. *Id.* at 98 (APA Art. X). Both the APA and the SA have noncompetition provisions that bind the signatories and extend such proscriptions to "affiliates"—a relationship that likely means all of the

12

connected entities would have duties under all of the relevant documents. DE 15-1 at 87 (APA Art. VII); DE 1-1 at 2–3 (SA ¶ 2(a)). The SA extends Amwear's indemnity duty to pre-closing claims against On Guard. DE 1-1 at 11 (SA ¶ 12(a)).

More critically, the APA wholly incorporates the SA into the APA, such that the SA *is part of the APA*. The APA lists the SA as an Exhibit and attaches it. DE 15-1 at 42 (APA Table of Contents), 176 (SA). The APA proclaims that "the Exhibits and Schedules are a part of this Agreement as if fully set forth herein and all references to this Agreement shall be deemed to include the Exhibits and Schedules." *Id.* at 101 (APA Art. X). Amwear's representation that the SA is a "standalone document[,]" DE 20 at 6, is simply incorrect on this record. The SA was one in an interlocking set of transactions that comprised the full transaction for the Galls asset purchase. Amwear was integral to and at the table for the full set of negotiated steps.

Galls cites and correctly notes that *Fultz & Son, Inc. v. Browning-Ferris Indus. of Ohio, Inc.*, No. 3:12CV53, 2017 WL 2378170, at *1–*2 (N.D. Ohio June 1, 2017) is instructive to the Court's contract analysis. There, the court reviewed an "Asset Purchase Agreement" that stated that "[a]ll Exhibits . . . attached hereto . . . are by this reference incorporated herein and made a part hereof for all purposes as if fully set forth herein."[11] *Fultz & Son, Inc.*, 2017 WL 2378170, at *2. The court concluded[12] that "[b]y operation of the incorporation clause, then, the Supply

---

[11] Amwear attempts to distinguish by denying a similar incorporation clause was present. DE 20 at 5. Amwear, however, erroneously points to just the forum-selection clause's reference to "any Claim arising out of or relating to this Agreement or the transactions contemplated hereby" without referring to the explicit incorporation section. *Id.* In doing so, Amwear also directly concedes the applicability of the forum-selection clause to the contemplated transactions. *Id.* ("True, it applies to 'any Claim arising out of or relating to [the APA] or the transactions contemplated hereby[.]'").

[12] Amwear further attempts to distinguish the case by claiming that the "[a]dditional language in the Supply Agreement" in *Fultz & Son* is not present in the Supply Agreement here. DE 20 at 6. Factually, Amwear is correct; the Supply Agreement in *Fultz & Son* included cross-talking language between the Exhibit and the Asset Purchase Agreement. 2017 WL 2378170 at *2. By the court's own language, though, the incorporation clause's effect controlled the holding and the

Agreement became 'part' of the Asset Purchase Agreement" and the Asset Purchase Agreement's forum-selection clause applied "for all purposes[.]" *Id.* So too here. The SA is "a part of [the APA] as if fully set forth" within, and any reference to the APA "shall be deemed to include the [SA]." DE 15-1 at 101 (APA Art. X).

Finally, the incorporation conclusion mandates that the forum-selection clause of the APA control the SA and its VA. "[A]ny Claim arising out of or relating to this Agreement or the transactions contemplated hereby shall be instituted in the State of California[.]" DE 15-1 at 97 (APA Art. X). The forum-selection clause applies in two regards. First, by referring to "this Agreement," as previously discussed, the forum-selection clause directly includes, by incorporation, the SA. Second, "the transactions contemplated hereby" is defined in the APA to include the SA. *See* DE 15-1 at 46 (APA Art. I) (defining "Contemplated Transactions" as "the transactions contemplated by the Transaction Documents"); *id.* at 51 (APA Art. I) (defining "Transaction Documents" as including "the Supply Agreement"). The SA is within the APA and is a contemplated transaction. Amwear's collection efforts under the SA clearly fall within the scope of the forum-selection clause.

Amwear's main argument against the cascading effect of the APA's forum-selection clause is that the SA is a standalone document that points to the attached VA (which itself has something of a forum clause). DE 20 at 6–7. Amwear notes that the SA fills in non-conflicting terms with the terms in the VA, attached as an exhibit to the SA. *See* DE 1-1 at 5 (SA ¶ 6) ("Except where

---

additional language simply "supports [the] interpretation" the court already reached. *Id.* In other words, the supporting language analysis is dicta. *See Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) ("And dictum is anything 'not necessary to the determination of the issue[.]'") (quoting *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003). While there is no similar support in this APA and SA, the absence does not change the conclusion that the SA is fully incorporated by the APA.

expressly in conflict with the terms and conditions of this Agreement, the Galls, LLC Vender Agreement between the Parties . . . shall govern this Agreement."). The VA includes a forum-selection clause pointing to "the state and federal courts located in Fayette County, Kentucky[.]" *Id.* at 21 (VA ¶ 27). Amwear concludes "the Supply Agreement actually says . . . the provisions of the Vendor Agreement are superseded to the extent they conflict with the Supply Agreement, not the APA" and thus "the Supply Agreement has its own forum-selection clause that clearly dictates that this case by [sic] brought in the Eastern District of Kentucky[.]" DE 20 at 2 (emphasis in original).

The Court disagrees, for several reasons. First, the VA is unsigned and evidently was not separately consummated. DE 1-1 at 21 (VA). The SA references the VA "between the Parties," but no executed document exists in the record. *Id.* at 5 (SA ¶ 6). Further, the VA provision (DE 1-1 at 21 (VA ¶ 27)) purports to address claims under the VA. It is not clear to the Court how that circumscribed scope would impact a broader dispute if mapped onto the main SA. Finally, of course, the Court treats Amwear as functionally an APA party. As such, the APA would control over the second-level, awkwardly incorporated venue term from the Galls boilerplate form.

In the end, the Court's decision here simply recognizes the commercial and economic realities of the transactional events from April 26, 2019. A court "considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *G.C. Franchising*, 2021 WL 1209263, at *3 (quoting *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (emphasis added)). Here, Amwear (through common or shared ownership or control) has close ties with On Guard and Keystone.

15

Hawkins directs the operations of each entity. Amwear was itself a titular party to two of the contemplated transactions, and it would have affiliate limitations with respect to duties both in the APA and the SA. Amwear was the sole and explicit designated notice recipient, per the APA, for all of the selling parties. The closing for all of the documents occurred simultaneously, and the transactions were all component parts of one deal, what courts have called "a cohesive contractual scheme," *United Airlines*, 152 F. Supp. 3d at 1055, or "pieces of a jigsaw puzzle." *Am. Patriot Ins. Agy v. Mut. Risk. Mgmt., Ltd.*, 364 F.3d 884, 888-89 (7th Cir. 2004).

Finally, the conduct alleged—that behavior by Amwear and the selling entities induced formation of the SA and prompted or explained any SA breach, directly implicates allegations in the California litigation, along with the assertions raised by Galls in its defensive pre-suit letter in this case. The SA complaint begets questions about its formation and its relationship to the broader deal. Galls seems to concede it did not order enough uniforms; the reasons for the deficiency, and allegations pertaining to those reasons, is the same subject matter directly addressed within the APA and the California litigation scope. It is quite foreseeable and fair for Amwear, a California entity, to litigate these SA issues in the same California forum. Indeed, because of the APA, that likely is the only forum that can entertain all of the involved parties and associated claims.

IV. **CONCLUSION**

Accordingly, the Court **GRANTS** DE 15, and dismisses the case without prejudice.[13] The Court will enter a separate effectuating Judgment.

---

[13] The Court thus does not reach the issue of a discretionary stay or whether Galls can meet the rigorous *Colorado River* abstention requirements.

This the 18th day of May, 2021.

Signed By:
*Robert E. Wier* REW
**United States District Judge**